IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CENTRIPETAL NETWORKS, INC.,

Plaintiff,

v.  Civil Action No. 2:17cv383

KEYSIGHT TECHNOLOGIES, INC. &
IXIA,

Defendants.

## OPINION & ORDER

This matter came before the Court pursuant to Defendants Keysight Technologies, Inc.'s ("Keysight's") and Ixia's (collectively, "Defendants'") Motion to Transfer Venue Under Section 1404(a) ("Motion to Transfer") and Keysight's Motion to Dismiss for Improper Venue ("Motion to Dismiss"). Docs. 23–24. The Court heard argument on these Motions on November 14, 2017, **DENIED** Defendant Ixia's Motion to Transfer, and reserved ruling on the Motion to Dismiss. After further consideration, and for the reasons stated herein, the Court **DENIES** Defendant Keysight's Motion to Dismiss, Doc. 23, and further explains its basis for DENYING Defendant Ixia's Motion to Transfer.

### I. BACKGROUND

A.  **Factual Allegations**[1]

This action arises from the alleged infringement of four (4) of Plaintiff's patents: U.S. Patent No. 9,264,370 (the "'370 Patent"), U.S. Patent No. 9,137,205 (the "'205 Patent"), U.S. Patent No. 9,560,077 (the "'077 Patent"), and U.S. Patent No. 9,413,722 (the "'722 patent").

---

[1] The Court cautions that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motions. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

1

Doc. 1 ("Compl.") ¶¶ 6, 9–15.

Plaintiff Centripetal is a network security company incorporated in Delaware with its principal place of business in Herndon, VA. Id. ¶ 1. Defendant Keysight is incorporated in Delaware with its principal place of business in Santa Rosa, CA. Id. ¶ 2. Defendant Ixia is incorporated in California with its principal place of business in Calabasas, CA, and as of April 18, 2017, is owned by Defendant Keysight. Id. ¶ 3.

Plaintiff accuses the Ixia ThreatARMOR devices of infringing the '370 Patent, accuses those devices when used with Ixia's Application and Threat Intelligence servers, such as Ixia's Vision One devices, of infringing the '205 Patent and the '722 Patent, and accuses either setup of infringing the '077 Patent. Id. ¶¶ 16–62. Plaintiff seeks damages; injunctive relief; enhanced damages for willful infringement; attorneys' fees, costs, and expenses; and pre-judgment and post-judgment interest. Id. at 36–37.

### B. Procedural History

Plaintiff filed its Complaint in this Court on July 20, 2017. See Compl. The Parties filed a consent Motion for and extension of time to respond to the Complaint, Doc. 8, which the Court GRANTED, Doc. 12. Defendants timely filed a Motion to Dismiss on September 5, 2017. Doc. 20. They simultaneously filed the instant Motion to Transfer and Motion to Dismiss. See Docs. 23–24. They also filed an Answer. Doc. 29. Plaintiff responded in opposition to the instant Motions on September 19, 2017. Doc. 32. Defendants replied on September 25, 2017. Doc. 35.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Venue

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss an action where venue is improper. Fed. R. Civ. P. 12(b)(3). In patent infringement actions, venue

is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2017) ("§ 1400(b)"). Defendants must raise improper venue either in a motion made before a responsive pleading or as part of the responsive pleading, or they waive that defense. Fed. R. Civ. P. 12(b), 12(h)(1).

In considering a motion under Rule 12(b)(3), a court may examine facts outside the complaint. See Symbology Innovations, LLC v. Lego Sys., Inc., --- F.Supp.3d ----, No. 2:17cv86, 2017 WL 4324841, at *4 (E.D. Va. Sept. 28, 2017) (citing 14D Charles A. Wright et al., 14D Federal Practice and Procedure § 3826 & n. 30 (4th ed.)). When a defendant challenges the propriety of venue, plaintiff bears the burden of proof in this Circuit. Id. at *4 & n. 5 (observing that the issue varies by circuit and citing Smithfield Packing Co. v. V. Suarez & Co., 857 F.Supp.2d 581, 584 (E.D. Va. 2012); Colonna's Shipyard, Inc. v. City of Key W., 735 F.Supp.2d 414, 416 (E.D. Va. 2010); Dunham v. Hotelera Canco S.A. de C.V., 933 F.Supp. 543, 550 (E.D. Va. 1996)).

## B. Section 1404(a)

Under Section 1404(a), courts may, "[f]or the convenience of parties and witnesses . . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether transfer is proper, "a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." Pragmatus AV, LLC v. Facebook, Inc., 769 F. Supp. 2d 991, 994 (E.D. Va. 2011) (quoting Agilent Tech., Inc. v. Micromuse, Inc., 316 F. Supp. 2d 322, 324–25 (E.D. Va. 2004)). "The second prong of the 1404(a) analysis is a balancing test that weighs (1) the plaintiff's

choice of forum, (2) convenience of the parties, (3) witnesses conveniences and access, and (4) the interest of justice." Patent Licensing & Inv. Co., LLC v. Green Jets, Inc., No. 2:10cv421, 2011 WL 11797320, at *3 (E.D. Va. June 13, 2011) (quoting Pragmatus, 769 F. Supp. 2d at 994–95) (internal quotation marks omitted).

Whether a case merits transfer is a decision that rests with the discretion of the Court, which must balance any relevant factors, including:

> (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

BHP Intern. Inv., Inc. v. OnLine Exchange, Inc., 105 F. Supp. 2d 493, 498 (E.D. Va. 2000). "The party seeking transfer bears the burden of proving 'that the circumstances of the case are strongly in favor of transfer,'" and "transfer is not appropriate where it will only serve to shift the balance of inconvenience from one party to the other." Heinz Kettler GMBH & Co. v. Razor USA, LLC, 750 F. Supp. 2d 660, 667, 668 (E.D. Va. 2010) (quoting Jones v. Frazier, No. 1:09cv513, 2009 WL 2601355, at *8 (E.D. Va. Aug. 18, 2009) (emphasis in original)).

### III. ANALYSIS

Defendant Keysight alleges that venue is improper as to it, and Defendant Ixia alleges that venue is proper as to it but the Court should transfer the case pursuant to § 1404(a) and a forum selection clause. See generally Doc. 25. Defendant Keysight also asks the Court to transfer it as well should the Court only reach Ixia's Motion. See id. at 18. This memo addresses each issue in turn.

### A. Defendant Keysight's Motion to Dismiss

As a preliminary matter, this Motion is procedurally improper because Defendants cannot file multiple Rule 12 motions without leave of Court. See Fed. R. Civ. P. 12(g). This Motion and the Motion to Dismiss were filed on the same day, though, and the Answer preserved the venue defense, preventing any prejudice or undue delay from the multiple Motions. Furthermore, Plaintiff took advantage of the split Motions and filed separate briefs in response, apparently having no objection to the increased pages to respond. Thus, the Court **GRANTS LEAVE** for the separate Rule 12 motions because of the lack of delay or prejudice but further cautions the Parties that consent requests for separate memoranda or additional pages require leave of Court.

It is undisputed that Defendant Keysight does not reside in this District, and thus, Plaintiff must satisfy the venue test for non-residents. To establish venue over a nonresident defendant, a plaintiff must show that the District is a place "where the defendant has committed acts of infringement and has a regular and established place of business." § 1400(b). Defendant Keysight does not contest that it has a regular and established place of business in this District, instead only denying that it has committed any acts of infringement and denying that it can be imputed with Defendant Ixia's acts. Doc. 25 at 8–10. Thus, the only issue that the Court needs to decide is whether Plaintiff has met its burden to show acts of infringement by Defendant Keysight.

The facts of Defendant Keysight's relationship with Defendant Ixia are unusual because Defendant Keysight recently purchased Defendant Ixia. Defendant Keysight owns Keysight Technologies International Holdings, which acquired Defendant Ixia in April 2017. See Doc. 27 ("Orton Decl.") ¶ 3; see also Doc. 25 at 6 (asserting a date of April 13, 2017); Doc. 33 ("Deoras

Decl."), Ex. 6 (showing that Defendant Keysight announced its acquisition of Defendant Ixia on April 18, 2017). Defendants submitted a declaration stating that they "maintain separate books and records, separate bank accounts, and separate assets," retaining their formal corporate differences. Orton Decl. ¶ 3. They are discussing the possibility of a merger or asset transfer, which would result in Defendant Keysight selling the accused products, but they will not implement any such merger or transfer before February 2018. Id. ¶ 8.

Plaintiff concedes that Defendant Keysight does not directly infringe, instead alleging that it either induced infringement or is liable for Defendant Ixia's direct infringement. Doc. 32 at 18. On induced infringement, it cites that Defendant Ixia is now labeled as Defendant Keysight's "Ixia Solutions Group" and that the datasheet for the ThreatARMOR product is under Defendant Keysight's copyright and lists Ixia as a "Keysight Business." Doc. 32 at 18–20 (citing Deoras Decl., Exs. 5–6). It also observes that the datasheet promotes sales of the product and instructs customers in how to use the product. Id. at 20. It further argues that Defendant Keysight oversees Defendant Ixia's relationship with its seller in Chantilly, VA, and Defendant Ixia's use of its own products in its offices. Id. (citing Deoras Decl., Exs. 7–8). It insists that its allegations of induced infringement in the Complaint, combined with this evidence, should at least raise a question of fact that survives a motion to dismiss.

Plaintiff's adds further facts under its alternative argument about vicarious liability for Defendant Ixia's infringement. It acknowledges that whether a parent corporation is liable for its subsidiaries acts is a fact-specific inquiry. Doc. 32 at 22 (citing Keffer v. H.K. Porter Co., Inc., 872 F.2d 60, 65 (4th Cir. 1989)). Relevant factors under this analysis include:

> gross undercapitalization of the subservient corporation; failure to observe corporate formalities; nonpayment of dividends; siphoning of the corporation's funds by the dominant corporation; non-functioning of officers and directors;

absence of corporate records; and the fact that the corporation is merely a facade for the operation of the dominant stockholder or stockholders.

Keffer, 872 F.2d at 65. In addition to its facts alleged for induced infringement, Plaintiff observes that the President and CEO of Defendant Ixia prior to the acquisition is not a Vice President of Defendant Keysight and that several Keysight executives are on Defendant Ixia's board of directors. Doc. 32 at 22–23 (citing Compl. ¶ 3). Thus, it insists that Defendant Keysight actually controls Defendant Ixia.

Based on the evidence before the Court at this time, it appears that Defendant Keysight may have a degree of control over Ixia such that it would be responsible for Defendant Ixia's actions as of the date of the holding company's acquisition of Defendant Ixia. The Court believes that Plaintiff has established a prima facie basis for the Court having venue of Keysight through its holding company's acquisition of Defendant Ixia. The Court also notes that the same law firm represents both Defendants, which suggests a commonality of interest in the proceedings. Thus, the Court **DENIES** Defendant Keysight's Motion to Dismiss.

## B. Defendant Ixia's Motion to Transfer

This lengthy Motion involves a relatively straightforward question: when a forum selection clause in a nondisclosure agreement states that "[a]ny action arising out of a dispute between the parties shall be brought in a court located in Delaware," does that clause control disputes between the parties unrelated to the nondisclosure agreement? The relevant section states:

> 16. **Choice of Law.** This Agreement shall be governed by and construed in accordance with the laws of Delaware, without regard to its conflicts of law rules. Any action arising out of a dispute between the parties shall be brought in a court located in Delaware, and each party consents to the jurisdiction of the federal and state courts located in Delaware and submits to the jurisdiction thereof and waives the right to change venue.

7

Doc. 26 ("Carpio Decl."), Ex. G ("Nondisclosure Agreement" or "NDA") ¶ 16. The NDA also states the following at the beginning:

> 1. **Nature and Purpose.** The parties to this Agreement desire to engage in discussions in order to evaluate and possibly enter into a business and/or contractual arrangement, which discussions may involve the disclosure of trade secrets and/or financial, proprietary, competitively sensitive, and/or market sensitive information. The purpose of this Agreement is to define their rights and obligations with respect to such information. This Agreement does not obligate either party to disclose any information to the other or to enter into any other agreement or arrangement, nor shall it be construed as granting any rights by license or otherwise in any trade secrets or other intellectual property rights of either party. As provided for herein, the parties' obligations under this Agreement shall survive the termination of their business arrangements and/or contractual relationships, regardless of the manner of such termination.

Id. ¶ 1. The NDA further provides that it expires after three (3) years, with the exception of the provisions in ¶¶ 2–7. See id. ¶ 11.

As both Parties acknowledge, this Court has previously addressed a similar question regarding scope of a forum selection clause in VS Techs., LLC v. Twitter, Inc., No. 2:11cv43, 2011 WL 11074291 (E.D. Va. June 28, 2011). In VS Techs., this Court FOUND that a forum selection clause in Twitter's Terms of Service that addressed "All claims, legal proceedings, or litigation arising in connection with the Services . . . ." did not reach patent infringement claims. Id. at *1, *4–5. Defendant Ixia attempts to distinguish that case because of some factual differences involved in the eventual resolution of the case.

While there are certainly factual differences between VS Techs. and the instant case, the Court applies similar analysis here by **FINDING** that the subject matter of an agreement controls the scope of that agreement's forum selection clause in the absence of express language to the contrary. Both Parties agree that Delaware law controls the interpretation of the contract, but both also agree that Delaware law requires construing the contract as a whole. Doc. 32 at 8 (citing Intel Corp. v. American Guarantee & Liability Ins. Co., 51 A.3d 442, 446 (Del. 2012));

Doc. 35 at 3–4 (citing BE & K Eng'g Co., LLC v. RockTenn CP, LLC, 2014 WL 186835, at *6 (Del. Ch. Jan. 15, 2014) (quoting GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P., 36 A.3d 776, 779 (Del. 2012))). VS Techs. followed this same fundamental principle of examining the text of the contract as a whole. See VS Techs., 2011 WL 11074291, at *5. The forum selection clause in that case, read in a vacuum, covered patent infringement litigation because the alleged infringement arose "in connection with the Services." Id. at *1. Nevertheless, this Court limited the clause to litigation arising from the plaintiff's "access to and use of the services" because the agreement at issue limited its own scope in that manner, regardless of the language of the forum selection clause. See id. at *5. Similarly, the forum selection clause in this case, read in a vacuum, covers patent infringement litigation because it covers "a dispute between the parties." Id. at *1. Nevertheless, the agreement itself states that it "defines rights and obligations" regarding "trade secrets and/or financial, proprietary, competitively sensitive, and/or market sensitive information." NDA ¶ 1. The forum selection clause is also clearly aimed at the NDA's subject matter, starting with the phrase "This Agreement." Id. ¶ 16. The Court **FINDS** that the forum selection clause in the NDA only addresses claims regarding the subject matter of the agreement for two (2) reasons: because the Court looks to the subject matter of the agreement in reading a contract and because the NDA's plain text specifies a subject matter limitation. As a result, the Court **DENIES** the Motion to Transfer.[2]

---

[2] In its briefs, Plaintiff alternatively argues for denying the Motion under the typical § 1404(a) factors, but Defendants do not argue that the factors favor transfer in the absence of the forum selection clause. Compare Doc. 32 at 15–17 (discussing the factors) with Doc. 25 at 16–17 (merely addressing whether public interest factors weigh against enforcing the forum selection clause). Thus, the Court need not address that issue.

## IV. CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant Ixia's Motion to Transfer and Defendant Keysight's Motion to Dismiss. Docs. 23–24. The Court also **DENIES** the request for judicial notice, Doc. 28, **AS MOOT** because the Court has not used any of those documents at this stage.

The Clerk is **REQUESTED** to send a copy of this Opinion & Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 15, 2017