**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **IN RE: SUBPOENA TO NON-PARTY DOUGLAS A. SMITH** ) ) ) ) | |
| CENTRIPETAL NETWORKS, INC. ) ) Plaintiff, ) vs. ) ) KEYSIGHT TECHNOLOGIES, INC. and ) IXIA, ) ) Defendants. ) ) ) | Case No. _____ **Related to 2:17-cv-383-HCM-LRL** **(E.D.VA. Norfolk Division)** |

**NON-PARTY DOUGLAS A. SMITH'S MOTION TO QUASH SUBPOENA**
**PURSUANT TO FED. R. CIV. P. 45**

Non-party Douglas A. Smith respectfully moves to quash a subpoena for testimony and documents ("Subpoena") served on him by Keysight Technologies, Inc. and Ixia (collectively, "Defendants") on August 10, 2018.  This Subpoena is one of nine subpoenas served on individuals and companies purportedly to obtain information about financing and loans made to Centripetal Networks, Inc., a start-up company that sued Defendants for patent infringement in the Eastern District of Virginia.  *See Centripetal Networks, Inc. v. Keysight Technologies, Inc. and Ixia*, Case No. 2:17-383-HCM-LRL ("Patent Litigation").  Trial is set in that case for October 2018. As set forth below, the Subpoena should be quashed because (1) Centripetal has already provided the information sought; (2) the information sought has little (if any) relevance to the issues in the case (*e.g.*, patent infringement, patent validity, and damages), and (3) the Subpoena (and the eight other subpoenas) are likely being served more for harassment purposes

than to obtain relevant discovery. Mr. Smith, therefore, respectfully requests that the Court quash the Subpoena.

## FACTUAL BACKGROUND

### I. Brief Background of the Underlying Patent Litigation

Centripetal filed the Patent Litigation against Defendants on July 20, 2017, asserting that Defendants' technologies infringe a number of Centripetal's patents in the field of cyber security for networks. Case 17-cv-00383, Dkt. Nos. 1, 192. Centripetal, a startup company, owns numerous patents covering technologies for secured networking and threat detection, including the six patents asserted in the Patent Litigation. Defendants did not file any counterclaims and their defenses are only directed to defending against Centripetal's patent claims. *See* Case 17-cv-00383, Dkt. Nos. 206, 207 (Defendants' affirmative defense are failure to state a claim, non-infringement, invalidity, limitations on damages, prosecution history estoppel, unenforceability, lack of willfulness, and miscellaneous equitable defenses like acquiescence and estoppel). Thus, the issues involved in the case have to do with Defendants' infringement, potential damages and relief for Defendants' infringement, and the validity of Centripetal's patents. Defendants' fact discovery in the Patent Litigation is scheduled to close on September 7, 2018. Case 17-cv-00383, Dkt. No. 199. Trial is scheduled to begin October 2, 2018. Case 17-cv-00383, Dkt. No. 54.

### II. Over the Last Two Months, Defendants Served Nine Different Subpoenas For Documents and Deposition Regarding An Unrelated Litigation Related to Loans to Centripetal Networks That Is Irrelevant to Defendants' Patent Infringement

As opposed to focusing on the merits of Centripetal's patent claims against them, Defendants are directing their discovery efforts on a resolved breach of contract litigation from 2016 – 2017 that was initiated by Hudson Bay Master Fund Ltd., a former investor in Centripetal, and the payment of judgment in that dispute. Specifically, Defendants have served

nine subpoenas, including this one, relating to that prior litigation (the "Finance Action"). These subpoenas are:

- Hudson Bay Master Fund Ltd. and related entity Hudson Bay Capital Management LP (collectively "Hudson Bay");
- Current employees of Hudson Bay, Matt Croy and Richard Allison;
- Former Hudson Bay consultants, Joe Provost, Vivian Schneck-Last, Tom Kellerman, and Ann Barron-Dicamillo; and
- Non-party Douglas A. Smith, a resident of Dallas, Texas, who has loaned money to Centripetal as a private investor.

The Finance Action between Hudson Bay and Centripetal had nothing to do with Centripetal's patents; it was a simple contract dispute over Hudson Bay's loan where the parties had a dispute over the repayment terms of their agreement and there was a judgment against Centripetal for the sum loaned. Mr. Smith, an existing Centripetal investor at the time of the Finance Action, loaned Centripetal money in exchange for a simple security interest in Centripetal's patents to help Centripetal pay the judgment.

Notwithstanding the lack of relevance to this patent infringement case (and in the hopes of avoiding disruptive and unnecessary discovery of third parties), Centripetal produced to Defendants, with Hudson Bay's consent, all the discovery responses and deposition transcripts in the case, which includes Hudson Bay's internal confidential information, as well as all the public pleadings related to the Finance Action. Declaration of Hannah Lee in Support of Non-Party Doug Smith's Motion to Quash Subpoena ("Lee Decl.") ¶ 4. Centripetal also did an electronic search of its documents related to Mr. Smith, producing over 2,500 documents relating to Mr.

Smith, and also produced its security interest agreement with Mr. Smith. *Id.* Thus, Defendants already have discovery regarding the Finance Action.

Despite having the foregoing information, on August 10, 2018, Defendants served Mr. Smith with a subpoena for deposition and included the following 14 overbroad and unduly burdensome document requests:

1. All communications and correspondence between You and Centripetal.

2. All agreements, including draft agreements, between You and Centripetal.

3. All documents and communications that refer or relate to Centripetal.

4. All documents and communications that refer or relate to Keysight or Ixia.

5. All documents and communications that refer or relate to any of the Asserted Patents.

6. All documents and communications relating to Your security or ownership interests in the Asserted Patents.

7. All documents and communications relating to the value of each of the Asserted Patents.

8. All documents relating to Centripetal's efforts to raise capital between January 1, 2015 and the present.

9. All documents and communications relating to settlements of any claim, potential claim, or lawsuit involving any of the Asserted Patents.

10. All documents concerning any litigations involving the Asserted Patents.

11. All documents concerning this Action, including documents related to all oral or written statements You have made concerning this Action.

12. All documents and communications relating to *Hudson Bay Master Fund Ltd. v. Centripetal Networks, Inc.*, Case No. 16-cv-691/GBL-IDD in the Eastern District of Virginia.

13. All documents and communications that refer or relate to financing You provided to Centripetal, including but not limited to any funds You have made/advanced to Centripetal for purposes of this Action.

14. All documents and communications that relate to the financial health of Centripetal.

Lee Decl., *Ex.* 1. Additionally, between late June and August 17, 2018, Defendants served the other eight subpoenas identified above, each seeking similar information regarding Centripetal and the Finance Action.

### III. Defendants' Bad Faith During Meet and Confer Efforts

On August 13, 2018, Mr. Smith's counsel (who is also counsel for the other subpoenaed parties and Centripetal's counsel in the Patent Litigation) met and conferred with Defendants and requested that they withdraw the Subpoena as it sought documents that were irrelevant or because Centripetal had already produced information to Defendants in the Patent Litigation. Lee Decl., ¶ 5. During the meet and confer, Defendants' only basis for seeking such discovery is their generalized suggestion that such discovery is somehow related to the damages that Defendants owe Centripetal for their infringement of Centripetal's patents and considerations regarding the validity of Centripetal's patents known as "secondary considerations." Lee Decl., Ex. 2.

Defendants, however, were unable to articulate what specific relevant information they seek from Mr. Smith's personal files outside of what could be obtained from Centripetal, including other than the more than 2,500 documents that Centripetal produced pursuant to the search of Douglas Smith's name in Centripetal's electronic documents that includes agreements, communications regarding financing, investor documents, any communications with him regarding the asserted patents including his security interest. Lee Decl., ¶ 4. Defendants were also unable to articulate what additional information they are seeking from Doug Smith outside of what has already been produced, and show no need to depose him regarding a security interest in the Asserted Patents, which was already the subject of a deposition of a 30(b)(6) witness from Centripetal, a party to the Patent Litigation. Lee Decl., ¶ 5, Ex. 2.

## ARGUMENT

### I. The Discovery Sought Is Irrelevant and Duplicative of Previous Discovery

Rule 45 requires the Court to quash or modify a third-party subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Undue burden is determined based on factors such as relevance, the necessity of the information, the breadth and particularity of the requests, the time period covered by the request, the particularity with which the party describes the requested documents and the burden imposed. *MetroPCS v. Thomas*, No. 3:18-mc-29-K-BN, 2018 WL 2933673, at *7 (N.D. Tex. June 12, 2018). Defendants' Subpoena to Doug Smith is no more than part of a series of subpoenas to non-party individuals and companies regarding loans and financing of Centripetal that have nothing to do with Defendants' patent infringement.

Defendants do not have a reasonable basis for serving Mr. Smith individually for deposition and documents. Not only is such information irrelevant to Defendants' infringement of Centripetal's patents, but it is duplicative of information that Centripetal previously produced substantial information to Defendants regarding Mr. Smith, a third party. Defendants, moreover, are unable to articulate a specific or compelling need for this Subpoena from Mr. Smith. Indeed, Defendants only purported justifications for the information sought is that such information is purportedly relevant to "damages" and/or "other issues," like secondary considerations. Lee Decl., Ex. 2. A showing of relevancy requires more than an incantation of broad legal theories and Defendants credibly contend that they need further information that is relevant from Mr. Smith, in light of previous discovery served on Centripetal and other non-parties.

None of the Document Requests served on Mr. Smith are relevant to the Patent Litigation, and it is unduly burdensome for him to respond to these given the previous discovery that has been produced to Defendants. Specifically, Document Request Nos. 1-2, 6, 12 in the Subpoena regarding "all" communications and correspondence with Centripetal, agreements

with Centripetal, security interest in the Asserted Patents, and "all documents and communications" relating to the Finance Action are duplicative of documents that Centripetal already produced to Defendants. Lee Decl., Ex. 1 at 7-8. The remaining requests are unduly burdensome as posed to an individual investor of a company, have no specific connection to the technology or the Asserted Patents at issue in the Patent Litigation, and seek privileged documents. *See id.* at Document Request Nos. 3 and 4 ("all documents and communications" regarding generally Centripetal or the Defendants), Document Request Nos. 8, 13 and 14 (documents regarding the general "financial health" and financing of the company), and Document Request Nos. 9, 11 (documents concerning the Patent Litigation or settlement). Defendants failed to attempt to narrowly tailor these Requests to any of the claims at issue in the Patent Litigation. As to Document Request Nos. 5 and 7 which seek documents regarding the Asserted Patents or the "value" of the Asserted Patents, Mr. Smith has no relevant documents apart from his security interest in Centripetal's patents, and documents regarding his security interest have already been produced by Centripetal. *Id.* Presumably, Defendants' request for deposition will follow the same irrelevant subject matter. Forcing an investor in Centripetal to sit for a deposition on irrelevant subject matter is unduly burdensome.

As Defendants either ***already have*** information responsive to their requests or such requests are irrelevant, Defendants have no need to seek unduly burden Mr. Smith and seek additional documents and his deposition. *See, e.g.*, *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 53 (N.D. Tex. 2015) (quashing portion of subpoena where relevance of documents sought was "more attenuated" and "not limited" to relevant topics or categories of documents when taking into account the facts of the case, such as the nature and importance of the litigation, and the relevance of the information requested, need

for the requested documents, the breadth of document requests, the burden imposed, including the expense and inconvenience to a non-party).

**II. Defendants' Serial Subpoenas to Related Non-Parties Are Duplicative and Harassing**

Centripetal is a startup company, and as such, values the individuals who believe in the future of the company. Well aware of Centripetal's status, Defendants served this unduly burdensome and overbroad Subpoena to harass Centripetal and its investor. *See Turnbow v. Life Partners, Inc.,* No. 3:11-CV-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013) (quashing subpoena in part because it sought documents with little relevance to the underlying litigation); *In re O'Hare,* No. MISC. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012) (quashing subpoena seeking "all documents concerning the parties to the [underlying] action, regardless of whether those documents relate to that action and regardless of date"). This is particularly true given Defendants' inability to articulate a specific basis that Mr. Smith or his deposition is relevant to any remaining issues in the case.

Furthermore, evidence of Defendants' abuse of the discovery process includes serving serial discovery regarding the financing of Centripetal that far exceeds the bounds of what is proportional to the needs of the case. *MetroPCS*, 2018 WL 2933673, at *8 (the courts should also consider expense and inconvenience as factors when it comes to discovery sought from non-parties). Overall, Defendants have served nine subpoenas to individuals related to the Finance Action, seeking from all of them information regarding Centripetal's financing.[1] It is an abuse of discovery on non-parties, who are entitled to stronger discovery protections, to force each party

---

[1] Defendants have a record of using unreasonable scorched earth discovery tactics until the Court has to intervene. They were recently admonished at a hearing on August 3, 2018 in the Patent Litigation by Judge Henry C. Morgan in the Eastern District of Virginia for serving approximately 2,500 requests for admission, which the Court ordered that they withdraw as it was "just absurd" and, given Defendants' offer to "narrow" to 800, "beyond the pale." Lee Decl., Ex. 3, Patent Litigation Hearing Tr., August 3, 2018, 141:1, 16-17.

to expend substantial resources in responding to document requests and sitting for deposition when the information is readily available—indeed, already obtained—from a party to the case. For example, Centripetal produced Mr. Smith's agreement regarding his security interest with Centripetal, as well as more than 2,500 documents relating to Mr. Smith's communications with Centripetal. Yet Defendants have asked Mr. Smith to personally bear the cost of duplicating the same thousands of documents, to the extent that he has them, for no articulable reasons.

Further, many of these requests are not logical to serve on an individual non-party investor of a company—as a non-exhaustive example, why are Defendants seeking "all documents and communications relating to settlements of any claim, potential claim, or lawsuit involving any of the Asserted Patents" and "[a]ll documents concerning any litigations involving the Asserted Patents" (Requests 9, 10) from Mr. Smith? Even if he were to have any such information, the better and more complete source of information would still be Centripetal itself, which has already provided this information. Defendants' ill-directed requests belie their stated intentions of gathering information; they are imposing a litigation tax on non-parties related to Centripetal and the Finance Action, and fishing for information from any source, on any subject, that they can try to spin to disparage Centripetal's business at the upcoming trial in a few months. Indeed, as noted by Mr. Allison, Hudson Bay's in-house counsel, any information regarding the Finance Action was testified to. Lee Decl., Ex. 4. As Centripetal already produced such discovery to Defendants, there is nothing further to provide. Mr. Smith (as well as other third parties) should not be required to endure the cost of Defendants' overbroad assault, and asked to duplicate Centripetal's efforts with respect to potentially ***thousands*** of duplicative documents, plus an unknown number of others. Mr. Smith is not a party, nor is he a large

business with substantial resources, and his status as an investor in a litigating party does not open him up to such broad requests for documents or deposition

Moreover, even if the information were not available from Centripetal, the Non-Party subpoenas are duplicative and overlapping, maximizing the burden on non-parties by forcing them all to respond, with no specific articulation of what information each of the nine has that is different from the others.

## **CONCLUSION**

For these reasons, Non-Party Mr. Smith respectfully requests that the Court quash the Subpoena for deposition testimony and production of documents that is currently pending against him, as the information sought is irrelevant to the Patent Litigation and unduly burdensome to a non-party when Defendants can obtain any purported relevant information from Centripetal, a party to the Patent Litigation.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: August 24, 2018 | */s/ Mark C. Nelson* |
|  | Mark C. Nelson |
|  | Bar Number: 00794361 |
|  | BARNES & THORNBURG LLP |
|  | 2100 McKinney Ave., Suite 1250 |
|  | Dallas, TX 75201 |
|  | Email: mnelson@btlaw.com |
|  | Telephone: 214-258-4140 |
|  | Fax: 214-258/4199 |
|  |  |
|  | Hannah Lee |
|  | KRAMER LEVIN NAFTALIS |
|  | & FRANKEL LLP |
|  | 990 Marsh Road |
|  | Menlo Park, CA 94025 |
|  | Email: hlee@kramerlevin.com |
|  | Telephone: (650) 752-1700 |
|  |  |
|  | *Attorneys for Non-Party Douglas Smith* |

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, Hannah Lee, counsel for Centripetal and Mr. Smith, and Christopher Pulido, counsel for Defendants, met and conferred regarding the Subpoena to Mr. Smith on August 13, 2018, but could not reach agreement, as Centripetal had produced the requested information already, despite its objections to its relevance, and Defendants' Subpoena for deposition and documents to Mr. Smith was duplicative and unduly burdensome to a non-party.

> */s/ Mark C. Nelson*
> Mark C. Nelson

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record whom are deemed to have consented to electronic service are being served with a copy of this document via electronic mail on August 24, 2018.

>*/s/ Mark C. Nelson*
>Mark C. Nelson